# United States Court of Appeals

## For the First Circuit

No. 02-1190

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN EDUARDO MEJIA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Selya, Lynch, and Lipez, Circuit Judges.

    Timothy G. Watkins for appellant.
    Cynthia A. Young, Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, was on brief,
for appellee.

October 30, 2002

**LIPEZ, Circuit Judge**.  During his sentencing hearing for illegally reentering the United States after deportation, defendant Juan Eduardo Mejia argued that he should receive a downward departure from the sentence prescribed in the United States Sentencing Commission Guidelines (the Sentencing Guidelines) because his motivation for returning, namely, to care for his daughter, took him out of the "heartland" of illegal reentry defendants.[1]  The district court denied his motion for a downward departure based in part on its belief that it had no authority to consider a defendant's motive for returning as a basis for departure.

Mejia appeals this legal determination, arguing that the district court erred in its conclusion that it had no authority to consider a downward departure based on a defendant's atypical motivation in returning to the United States.  Finding that, in this case, Mejia's "motivation" argument for departure is semantically and practically equivalent to the specific offender

---

[1]The Introduction to the Sentencing Guidelines explains:

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

United States Sentencing Commission, Guidelines Manual, Ch. 1, Pt. A, intro. comment. 4(b)(Nov. 2001).

characteristic of "family ties and responsibilities" set forth in the Sentencing Guidelines, USSG § 5H1.6, we affirm the district court's denial of a downward departure without addressing the legal correctness of the district court's conclusion that motivation is an impermissible basis for departure.

## I.

We recite the facts as Mejia alleges them to be. Mejia first came to the United States in 1988, living briefly with his father in Boston before moving to New Bedford, where he met Melissa Desroches. During the course of their one-year relationship, Desroches and Mejia had a child: Adria Mejia-Desroches. At the relevant time, Adria resided with and was raised by her maternal grandmother, Gwen Andrade and Andrade's husband, on Cape Cod. Her mother played no role in her upbringing due to drug dependency and related problems, and her grandparents have legal custody.

Before his 1992 arrest for drug trafficking, possession of a firearm and assault with a dangerous weapon, Mejia lived in Hyannis, Massachusetts, near his daughter. During his incarceration following conviction for these offenses, and later when living in the Dominican Republic after his deportation on February 9, 1995, Mejia kept in contact with his daughter. In August 2000, Mejia received news that Gwen Andrade was ill and was not expected to live much longer. Mejia asserts that it was out of

concern for his daughter's well-being that he decided to leave the Dominican Republic and return to Massachusetts.

After his return to the United States, Mejia lived with a girlfriend in Mattapan, MA and earned approximately $600-$700 per week working for a cable company in New Hampshire. While he did not provide financial support to Andrade for the care of Adria, he did provide certain necessities and gifts for Adria when he had the money. During this time Mejia would visit Adria, and Andrade allowed Adria to be with her father on overnight visits.

On January 29, 2001, Mejia was arrested in Boston on charges of distributing cocaine, and subsequently convicted on May 18, 2001, in South Boston District Court and sentenced to time served. He was immediately taken into federal custody on an outstanding arrest warrant for illegal reentry following deportation.

Pursuant to a plea agreement with the government, Mejia pled guilty on September 14, 2001, to one count of illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a)(b)(2) (2000). Before sentencing, Mejia filed a motion requesting a downward departure because his reentry into the United States was "based on his extraordinary family ties and responsibilities with respect to his young daughter." At the sentencing hearing Mejia, relying on United States v. Lipman, 133 F.3d 726 (9th Cir. 1997), revised his motion for a downward

-4-

departure, asserting instead that his motivation for returning to the United States took him out of the heartland of reentry cases. Mejia's counsel argued that the "archetype of illegal reentry offenders which Congress targeted for severe punishment" are those who return to the United States for unlawful or pecuniary reasons. Thus, because Mejia's motivation for returning was concern for his daughter, he fell outside the heartland of the offense of illegal reentry. The district court denied the motion, concluding that it did not have the authority to depart from the Sentencing Guidelines on the basis of motivation as a factor standing alone, and that, in light of Andrade's husband's plans to retain custody of Adria, Mejia's situation was insufficiently extraordinary to meet the requirements of a downward departure based on the "family ties and responsibilities" factor. USSG § 5H1.6.

Applying the Sentencing Guidelines, the district court determined that Mejia had a base offense level of 8. However, Mejia had been deported after having been sentenced to 4-5 years on a 1992 conviction for drug trafficking, and was therefore subject to a 16-level increase for a defendant who was previously deported after a conviction for certain specified felonies, including drug trafficking offenses for which the sentence imposed exceeded 13 months. USSG § 2L1.2(b)(1)(A). The district court calculated Mejia's adjusted offense level to be 24, bringing his total offense level, after the 3-level downward adjustment for acceptance of

responsibility, to 21. On December 14, 2001, Mejia was sentenced to 46 months' imprisonment and 2 years' supervised release.

## II.

The Sentencing Reform Act of 1984 allows a defendant to appeal an upward departure and the government to appeal a downward departure. 18 U.S.C. § 3742(a)(3), (b)(3) (2000). A defendant can also appeal from the refusal of the district court to grant a downward departure if the district court bases its decision on a view that it lacks the legal authority to consider a departure. United States v. Ahlers, No. 01-2570, slip op. at 6 (1st Cir. Sept. 30, 2002)("Appellate jurisdiction from a denial of a departure request attaches when the sentencing court bases its action on a perception that it lacks the legal authority to grant the request."); United States v. Woodward, 277 F.3d 87, 92-93 (1st Cir. 2002)("[A] refusal to depart is unreviewable unless the district court based its decision on an error of law.")(quoting United States v. Dewire, 271 F.3d 333, 337-38 (1st Cir. 2001)); see also United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994)("It is by now axiomatic that a criminal defendant cannot ground an appeal on a sentencing court's discretionary decision not to depart below the guideline sentencing range."). Accordingly, we review de novo a district court's determination of its authority to depart, but lack jurisdiction to review a discretionary decision not to depart from the Sentencing Guidelines.

-6-

**III**.

At Mejia's sentencing hearing, the district court declined to depart from the Sentencing Guidelines on two grounds. First, the court concluded that motive is not a permitted factor for departure: "I do not think...that I have authority to depart. I do not think that motive, whatever the motive in this case for coming back to see his daughter, is a ground for departure." Second, the court determined that the facts of Mejia's case were not sufficiently extraordinary to meet the standard for a departure based on the "family ties and responsibilities" offender characteristic.

The Sentencing Guidelines establish ranges of criminal sentences for federal offenses and offenders. A district court must impose a sentence within the applicable Guideline range if it finds the case to be a typical one. However, in an "exceptional" case, a district court may depart from the Guideline range "if [it] finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 1553(a) (2000); see also Koon v. United States, 518 U.S. 81, 95 (1996); United States v. Pereira, 272 F. 3d 76, 80 (1st Cir. 2001).

The Sentencing Commission lists certain offender characteristics that can never be grounds for departure, and other factors that are either encouraged or discouraged bases for

-7-

departure. The Sentencing Commission lists "family ties and responsibilities" as a discouraged factor, and stipulates that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." USSG § 5H1.6. Unmentioned offender characteristics that are "the semantic or practical equivalents" of encouraged or discouraged characteristics should be examined within the structure of the Sentencing Guidelines. Koon, 518 U.S. at 110. "To hold otherwise would enable defendants to circumvent the entire Guideline structure by cleverly characterizing discouraged factors in such a way as to appear as--and be treated under the more lenient standard of-- unmentioned factors."[2] United States v. Bogdan, 284 F.3d 324, 329 (1st Cir. 2002); see also United States v. Romero, 32 F.3d 641, 653 (1st Cir.1994) (treating defendant's status as a father under the category of "family ties and responsibilities," despite his argument that such status should be examined as a separate, unmentioned factor).

---

[2]A court may decide to depart from the Sentencing Guidelines in reliance on a factor not specifically enumerated in the Guidelines. "If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland." Koon, 518 U.S. at 96 (internal citations omitted). As we said in Bogdan, this analytical framework for unmentioned factors, as exposited in Koon, is less demanding than the requirement of "exceptionality" for discouraged factors.

Arguing that his motivation for committing the offense of unlawful reentry is a factor not explicitly listed by the Commission as encouraged or discouraged, Mejia challenges the district court's determination that motivation is not a permissible unmentioned ground for departure. However, the claim that his relationship with his daughter and his responsibility as a parent were factors in the commission of the offense and should therefore mitigate his punishment is not meaningfully distinguishable from the argument that his sentence should be reduced due to his exceptional family ties and responsibilities.

Defendants usually invoke the "family ties and responsibilities" extant at the time of sentencing in arguing for a downward departure (that is, they argue the consequences of a sentence on their family ties and responsibilities). Here, with his motivation argument, Mejia invokes the "family ties and responsibilities" extant at the time he committed the crime to lessen his culpability for the crime of illegal reentry. However, there is nothing in the text of USSG § 5H1.6 stipulating that "family ties and responsibilities" is only a discouraged factor in assessing the consequences of a sentence and not in assessing the culpability for a crime. Thus, we find that Mejia's claim, however he wishes to characterize it, is inescapably based on factors explicitly accounted for in the Sentencing Guidelines, namely, "family ties and responsibilities," and do not reach the question

of whether motivation as a separate category is ever a permissible ground for departure.

The district court determined that the facts of Mejia's family ties and responsibilities are not sufficiently exceptional to warrant a departure on this ground.  Because the district court did not misunderstand its legal authority to depart downward, but merely exercised its discretion not to do so, we lack jurisdiction to review the court's refusal to grant a departure.

Accordingly, the sentence imposed by the district court is <u>affirmed</u>.

So ordered.