**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 20, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EDUARDO GALARZA-PAYAN,

Defendant-Appellant.

No. 05-2108

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-04-966-RB)**

---

Submitted on the briefs:

Richard C. Cauble, Las Cruces, New Mexico, for Defendant-Appellant.

David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United States Attorney, Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **KELLY** , **O'BRIEN** , and **TYMKOVICH** , Circuit Judges.

---

**TYMKOVICH** , Circuit Judge.

---

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Eduardo Galarza-Payan, a Mexican citizen, pleaded guilty to reentry after deportation in violation of 8 U.S.C. § 1326(a)(1), (2) and (b)(2). Galarza asked the district court to consider sentencing him below the applicable range in the United States Sentencing Guidelines on the basis of his "cultural assimilation"—i.e., close familial and cultural ties to the United States. The district court denied his request and sentenced him within the range called for by the Guidelines. He now appeals his sentence, contending that the court acted unreasonably in refusing to adjust his sentence downward.

We take jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

Galarza was apprehended in Sunland Park, New Mexico, where he admitted to entering the United States illegally. Galarza had previously been deported to Mexico based upon a felony conviction (robbery) committed in El Paso, Texas. He pleaded guilty to illegal reentry as charged in the present indictment.

At sentencing, the government's presentence report calculated that Galarza's presumptive sentence under the Guidelines fell in the range of 57 to 71 months. Galarza initially moved for a downward departure from the applicable range on the grounds of cultural assimilation. Specifically, he argued that his

culpability should be mitigated because his reentry was motivated by his "family and community ties" to this country. Aplt. Br. at 5. During Galarza's sentencing proceedings, the Supreme Court issued *United States v. Booker*, 543 U.S. 220, 258–59 (2005), which made the application of the Guidelines advisory, rather than mandatory. Responding to the changed legal landscape, Galarza filed a post-*Booker* sentencing memorandum in which he reiterated his cultural assimilation grounds for a sentence adjustment but urged the court to consider these factors as a matter of discretion, given the advisory nature of the Guidelines.[1]

In particular, Galarza offered the following mitigating circumstances: (1) he had lived in the United States since he was 12 years old (he was deported following his arrest at age 24, and he was 28 at the time of sentencing in this case); (2) he had attended middle school and high school in New Mexico; (3) he had lived and worked in Texas, Colorado, and New Mexico; (4) he possessed only a limited command of the Spanish language; (5) his parents and all three brothers were living in El Paso, Texas; and (6) his mother was presently ill and scheduled to undergo surgery. Therefore, his counsel concluded in oral argument, "all of those circumstances . . . militate for finding that he came [to the United States] for familial rather than economic [or other] reasons." Sent. Tr. at 3.

---

[1] At the sentencing hearing, defense counsel told the district court, "I don't know that downward departures exist much anymore, so that's why I put what I put in the form of a sentencing memorandum. . . ." Sent. Tr. at 3.

The district court, after reviewing the facts of the case and hearing arguments of counsel, announced that, while he acknowledged cultural assimilation as a valid consideration for a sentence adjustment, he did not believe an adjustment was warranted in Galarza's case. The district judge denied Galarza's request and sentenced him to the bottom of the applicable range. [2] It is clear from the record that the judge recognized the advisory nature of the Guidelines and that he took into account sentence uniformity as well as other considerations mandated in 18 U.S.C. § 3553(a). It is also clear that he did not believe Galarza's case presented unique circumstances that supported differentiating him from other similarly situated defendants.

## II. Discussion

We review sentences imposed by the district court for reasonableness. *Booker*, 543 U.S. at 260–65; *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). Galarza claims his sentence was unreasonable and puts forth two arguments. First, he alleges the district court erroneously employed pre-*Booker* standards and analysis and thus did not grant proper consideration to the relevant § 3553(a) factors. Second, he contends, even if the court properly considered all relevant factors, it reached an unreasonable conclusion in light of the evidence of his cultural assimilation.

---

[2] The judge determined Galarza's sentence should fall between 57 and 71 months and sentenced him to 57 months.

-4-

**A.**

At sentencing, the district court stated that Galarza's circumstances would have to "fall outside the heartland" to be worthy of a "departure," or downward adjustment. Sent. Tr. at 13. Finding nothing exceptional about his circumstances, the court sentenced Galarza to the low end of the applicable sentencing range. Galarza contends on appeal that the district court's statement suggests it considered the request for adjustment in a mandatory, pre- *Booker* fashion. Thus, he argues, even though the district judge explicitly stated that the Guidelines were "nonmandatory, advisory only," *id.*, he implicitly accepted the pre- *Booker* limitations on sentence adjustments, which precluded him from considering all of the relevant § 3553(a) factors. We disagree.

The term "heartland" has its origins in the Guidelines' policy statements. The Guidelines instructed courts not to depart from a sentencing range absent unusual circumstances. The reason for this was that departures outside the applicable range were intended for "extraordinary case[s] that, because of a combination of such characteristics or circumstances, differ[] significantly from the heartland cases covered by the [G]uidelines." *United States v. Serrata*, 425 F.3d 886, 911 (10th Cir. 2005) (quoting commentary to USSG § 5K2.0 (policy statement)) (internal quotations omitted). Courts used this terminology as a

shorthand way of analyzing whether particular defendants qualified for a downward or upward departure under the Guidelines.

In this case, the district court, while using pre-*Booker* Guidelines terminology, did not sentence Galarza in a mandatory fashion. To the contrary, the record makes clear that the district court understood its discretion and considered at least four § 3553(a) factors, including (1) "the history and characteristics of the defendant"; (2) "the need for the sentence imposed to . . . promote respect for the law . . . [and] to afford adequate deterrence to criminal conduct . . . and to protect the public from further crimes of the defendant"; (3) "the sentencing range established for the applicable category of offense committed by the applicable category of defendant"; and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (2), (4), and (6). Indeed the concept of a "heartland"—or similarity among cases—is a part of § 3553(a)(6) (avoiding sentencing disparities), and is a proper consideration when applied in a discretionary fashion.

Even in the post-*Booker* legal landscape, we can expect judges to employ the familiar terminology of the Guidelines: The "now-advisory Guidelines are also a factor to be considered in imposing a sentence, which means that district courts 'must consult those Guidelines and take them into account when

sentencing.'" *Kristl*, 437 F.3d at 1053 (quoting *Booker*, 543 U.S. at 264). Furthermore, "[a]lthough district courts post-*Booker* have discretion to assign sentences outside of the Guidelines-authorized range, they should also continue to apply the Guidelines departure provisions in appropriate cases." *United States v. Sierra-Castillo*, 405 F.3d 932, 936 n.2 (10th Cir. 2005). "[T]he sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence," and we will "not demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005) (internal quotations and citations omitted).

Although the district court referenced the Guidelines' departure language in evaluating Galaraza's sentence, the record plainly shows it considered the relevant § 3553(a) factors in reaching its conclusions as to an appropriate sentence. Therefore, we find no error in the district court's consideration of the relevant factors for sentencing.

**B.**

Alternatively, Galarza challenges the reasonableness of the 57-month sentence imposed by arguing his cultural assimilation necessitated an adjustment

from the advisory Guidelines sentence. He does not dispute the calculation of the initial Guidelines range, in this case 57 to 71 months.

Where a defendant's properly calculated sentence falls within the applicable Guidelines range, it is "entitled to a rebuttable presumption of reasonableness." *See United States v. Kristl*, 437 F.3d at 1054. The defendant or the government may rebut the presumption by showing the sentence is nonetheless unreasonable in light of the factors contained in 18 U.S.C. § 3553(a). *Id.* We review the district court's legal conclusions de novo and its factual determinations for clear error. *Serrata*, 425 F.3d at 906.

Galarza seeks to rebut the presumption of reasonableness with evidence of his cultural assimilation. Prior to *Booker*, the Ninth Circuit had held that a sentencing court had authority to depart from the applicable range for illegal reentry under § 5K2.0 of the Guidelines based on a defendant's cultural ties to the United States. *See United States v. Lipman*, 133 F.3d 726 (9th Cir. 1998). That court found that "cultural assimilation" is "akin to the factor of 'family and community ties'" and could support a departure "in extraordinary circumstances." *Id.* at 730. The court's rationale was that someone who illegally reenters the United States with the goal of reuniting with family and friends is somehow less blameworthy than someone who reenters for criminal or even economic reasons.

Before *Booker*, we had not spoken specifically to this ground for departure, although other circuits had recognized the argument in varying degrees. *See, e.g., United States v. Rodriguez-Montelongo*, 263 F.3d 429, 433 (5th Cir. 2001) (holding cultural assimilation is permissible basis for downward departure); *United States v. Sanchez-Valencia*, 148 F.3d 1273, 1274 (11th Cir. 1998) (upholding district court's recognition of its authority to depart in light of *Lipman*); *cf. United States v. Mejia*, 309 F.3d 67, 71 (1st Cir. 2002) (finding that "family ties" such as a claimed cultural connection to the United States is a "discouraged factor" under the Guidelines).

We need not address that debate in the altered post-*Booker* sentencing landscape. Now that the Guidelines are advisory, courts will continue to consider a defendant's "history and characteristics" under § 3553(a)(1). The extensiveness of "family and cultural ties," however the factor is characterized, will still be part of tailoring an appropriate sentence. But it is also clear in assessing the reasonableness of a sentence that a particular defendant's cultural ties must be weighed against other factors such as (1) sentencing disparities among defendants with similar backgrounds and characteristics, and (2) the need for the sentence to reflect the seriousness of the crime and promote respect for the law. § 3553(a)(2), (6).

A close review of the § 3553(a) factors, the arguments presented by Galarza at sentencing, and the explanations provided by the district court disclose that the court did not err in its assessment. First, it was "presumptively reasonable" for the court to sentence Galarza within the applicable Guidelines range. Second, the district court specifically reviewed and rejected Galarza's claim in light of the relevant factors contained in § 3553(a) and the circumstances of the case. While not discrediting the grounds for Galarza's request as a general matter, the court was also mindful of the need for sentencing uniformity. The judge stated that he had seen "lots of tragic situations" where "families' lives are torn by the border" and that, after consulting the advisory Guidelines and comparing Galarza's case with others, he did not believe that Galarza's case warranted differentiation from the others. Sent. Tr. at 12–13. Moreover, the court took special note of Galarza's prior history of crime in the United States, which counterbalanced the mitigating circumstances presented.

* * *

We conclude the district court properly examined the § 3553(a) factors. Taking into account the facts of this case, the considerations behind the Guidelines calculations, and the concerns expressed by the district court, we are satisfied that the sentence imposed was reasonable.

### III. Conclusion

For all of the above reasons, we find that the district court did not err in sentencing Galarza. We therefore AFFIRM the decision below.