**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HERIBERTO GOMEZ-CASTILLO,

    Defendant - Appellant.

No. 05-4139

(D. Utah)

(D.C. No. 1:04-CR-173-01-DB)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant-Appellant Heriberto Gomez-Castillo pled guilty to one count of illegal reentry by an alien who had been previously deported, in violation of 8 U.S.C. § 1326(a). He was sentenced to forty-six months' imprisonment, followed by thirty-six months of supervised release. He appeals his sentence, which we affirm.

## BACKGROUND

Gomez-Castillo, a native and citizen of Mexico, was arrested on drug and weapons offense charges in Box Elder County, Utah, on October 19, 2004. On November 29, 2004, Bureau of Immigration and Customs Enforcement ("BICE") agents met with Gomez-Castillo in the Box Elder County jail and discovered that he was in the United States illegally and that he had been deported twice before, most recently in 2001. Gomez-Castillo was accordingly indicted on one count of reentry of a previously deported alien, in violation of 8 U.S.C. § 1326(a).

On December 17, 2004, the government filed a Notice of Sentencing Enhancement, based upon Gomez-Castillo's prior conviction for an aggravated felony, which made him eligible for the more severe penalties provided in 8 U.S.C. §§ 1326(b)(2) and 1101(a)(43).[1] On January 31, 2005, Gomez-Castillo

---

[1]Under §§ 1326(b)(2) and 1101(a)(43), Gomez-Castillo could be imprisoned for up to twenty years and fined $250,000 or both.

pled guilty pursuant to a written plea agreement. In exchange for Gomez-Castillo's guilty plea, the government agreed to recommend a reduction in his sentence for acceptance of responsibility, provided Gomez-Castillo continued to display such acceptance.

Following Gomez-Castillo's guilty plea, the Probation Office prepared a presentence report ("PSR"). It calculated a recommended sentence under the United States Sentencing Commission, Guidelines Manual ("USSG") (Nov. 2004). The PSR assigned Gomez-Castillo a base offense level of eight, which it then increased by sixteen levels because he had been previously deported after being convicted for a felony that was a crime of violence. USSG §2L1.2(b)(1)(A)(ii). After deducting three levels for acceptance of responsibility pursuant to §3E1.1, the PSR arrived at a total offense level of twenty-one. With a criminal history of category III, the Guideline sentencing range was forty-six to fifty-seven months.

Gomez-Castillo filed a Sentencing Memorandum, in which he made no objections to the PSR, but argued mitigating factors should lead to a lower sentence than that suggested by the Guidelines. Specifically, he argued that the nonviolent nature of his offense of reentry, coupled with the fact that his wife, step-daughter, father and two siblings lived in Utah and that he, his father and his siblings worked in Utah to support family members remaining in Mexico, merit a

"[v]ariance from the Guideline [r]ange." Sentencing Mem. at 3, R. Vol. I, doc. 21. Gomez-Castillo also argued that USSG §2L1.2 "unreasonably assesses a level of dangerousness to [him] that is not warranted," Sentencing Mem. at 4, R. Vol. I, and that it double counts his prior felony conviction, since it both enhances his base offense level and counts towards his criminal history. Finally, he argued that the existence of disparities between sentences imposed in districts where "fast-track" programs exist for aliens accused of illegal reentry and in districts, like Utah, where no such "fast-track" program exists merits a lower sentence under the sentencing factors of 18 U.S.C. § 3553(a). The government responded to the Sentencing Memorandum, arguing for imposition of a sentence consistent with the Guideline range.

At his sentencing proceeding, Gomez-Castillo informed the court that his family had left Utah to return to Mexico and will "never come back here." Tr. of Sentencing at 6, R. Vol. III. The district court then imposed a sentence of forty-six months. The court stated that the sixteen-point enhancement was appropriate "because [Gomez-Castillo] has the kind of criminal history that warrants the 16 point enhancement." Id. at 7. The court noted that such an enhancement serves "a simple desire . . . to keep the streets of America safe." Id. With respect to the disparity between sentences imposed in districts with "fast-track" programs and those without such programs, the court stated:

I have commented on this disparity between the fast track programs on the borders and the sentences we routinely hand down . . . for two or three years now. I don't apologize for it nor encourage any change in the system. I have only represented to an Assistant U.S. Attorney from time to time that I wonder if the Attorney General of the United States has really thought this through, and is employing a system in a way they think is fair.

There is no equal protection argument, there is no argument of any kind. The law has long had as a factor in terms of punishment and prosecution where a person gets caught and there are disparities. There is disparity between state and federal systems, and some disparity between federal to federal systems, in spite of the sentencing guidelines effort to make the sentences similar for similar crimes. There is nothing in this particular case that warrants a departure from that guideline system, and that will be the sentence.

. . . .

Mr. Gomez, you even have pending charges before you now in the United States involving drug crimes. You have come to this country and committed the kinds of crimes that make this country extremely interested in keeping you out.

Id. at 7-8. This appeal followed. Gomez-Castillo argues (1) the district court "applied an incorrect legal standard at sentencing by requiring Mr. Gomez-Castillo to make a showing that downward departure was warranted," Appellant's Op. Br. at 4, and (2) the district court's "categorical refusal" to take into account the undisputed sentencing disparities caused by the existence of "fast-track" programs in some districts was legal error resulting in an unreasonable sentence. Id. at 14.

## DISCUSSION

Following the United States Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Guidelines are advisory rather than mandatory. Nonetheless, because sentencing courts are required to "consider" the properly-calculated Guidelines sentencing range, United States v. Gonzalez-Huerta, 403 F.3d 727, 748-49 (10th Cir.) (en banc) (internal quotation omitted), cert. denied, 126 S. Ct. 495 (2005), we continue to review the sentencing court's factual findings under the Guidelines for clear error and its legal determinations de novo. United States v. Serrata, 425 F.3d 886, 906 (10th Cir. 2005). We review for reasonableness the ultimate sentence imposed, Booker, 543 U.S. at 261-62 (Breyer, J.), "guided by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam).

We have recently explained how we conduct that reasonableness review. We have joined several other circuits in concluding that "a sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." Kristl, 437 F.3d at 1054. Accordingly, when conducting reasonableness review of a sentenced imposed post-Booker, we employ a "two-step approach[,] . . . [f]irst . . . determin[ing] whether the district court considered the applicable Guidelines range," and correctly calculated it. Id. at 1055. If the court sentenced the defendant within that range, the defendant may then rebut that

presumptively reasonable sentence "by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)." Id. That is "a deferential standard." Id. at 1054.

### I. Standard used by district court

Gomez-Castillo focuses on the district court's statement that "[t]here is nothing in this particular case that warrants a departure from that guideline system," Tr. of Sentencing at 8, R. Vol. III, and argues that statement demonstrates that the district court "applied a legal standard that no longer exists" after Booker. Appellant's Op. Br. at 5. "By requiring Mr. Gomez-Castillo to meet some unspecified burden in order to avoid a guideline sentence, the court appears to be re-imposing the same burden which Booker clearly remove[d]." Id. at 8. We disagree.

As we indicated in Kristl, the starting point for the district court's calculation of a sentence is the Guideline sentence, which is presumptively reasonable. That is what the district court first calculated in this case. It then becomes the defendant's burden to rebut the presumptive reasonableness of that sentence by pointing to other factors in § 3553(a). Kristl, 437 F.3d at 1055; see United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc)

(finding defendant failed to show that the existence of fast-track disparities warranted a sentence below the presumptively reasonable Guideline sentence, and stating "[a]s with departures, the proponent of a factor that would work in the proponent's favor has to provide the basis to support it").  The fact that the district court used the word "departure" does not, by itself, convince us that the court failed to apply the standards announced in Booker.  "Even in the post-Booker legal landscape, we can expect judges to employ the familiar terminology of the Guidelines."  United States v. Galarza-Payan, 441 F.3d 885, 888 (10th Cir. 2006).  It is clear that the district court understood that the Guideline sentence was no longer to be mandatorily imposed, but, rather, provided a starting point from which the court would determine a sentence after considering the 18 U.S.C. § 3553(a) factors.

Further, we find no error in the court's application of those factors. Section 3553(a) includes as sentencing factors the nature of the offense of conviction, the characteristics of the defendant, the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide any needed treatment for the defendant, as well as the need to avoid unwarranted disparities among similarly situated defendants committing similar crimes.  The only factors Gomez-Castillo argued were the nonviolent nature of the crime of reentry, the fact that his family lived in Utah, the degree of

severity of his criminal history, and the disparities created by the existence of fast-track districts.

Gomez-Castillo's argument about the nonviolent nature of the crime of reentry is just a generalized attack on sentences established for the offense of illegal reentry and provides no basis for leniency in his particular case. With respect to his argument about his personal circumstances, Gomez-Castillo did not develop any *particular* argument that the fact of his family being in Utah suggested the need for a sentence below the Guideline one. Moreover, by the time of sentencing, he had completely flipped this argument and asserted that because his family had gone back to Mexico, he would have no incentive in the future to return to the United States. The district court rightly concluded that neither of these factors assisted Gomez-Castillo in rebutting the presumptively reasonable Guideline sentence.

With respect to the implications of the severity of Gomez-Castillo's criminal history, the district court's statements at sentencing indicated that it placed considerable weight on the need for the sentence imposed to protect the public and to provide adequate deterrence. The court noted Gomez-Castillo's not insignificant criminal history, and his pending charges involving drugs. While Gomez-Castillo would have us look instead at the nonviolent nature of his offense of conviction (illegal reentry), he cannot ignore his serious criminal history and

repeated efforts to reenter and remain illegally in this country. The district court clearly felt that the Guideline sentence was appropriate and reasonable, because it felt Gomez-Castillo's criminal history was significant and his sentence therefore needed to provide adequate deterrence and protection of society.

## II. Fast-track disparities

The final § 3553(a) factor which Gomez-Castillo would have us give determinative effect is the undisputed existence of sentencing disparities between illegal aliens sentenced in districts containing fast-track programs and districts without such programs. Section 3553(a)(6) states that, in sentencing defendants, courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Gomez-Castillo argues that the disparities created by fast-track programs are unwarranted and that the district court erred in refusing to consider those disparities and/or refusing to sentence Gomez-Castillo below the Guideline range.

Fast-track programs originally were confined largely to states bordering Mexico, where federal prosecutors were "faced with increasing numbers of illegal reentry and other immigration cases." United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005). These programs permit "defendants accused of certain immigration offenses [to] plead guilty early in the process and waive their

rights to file certain motions and to appeal, in exchange for a shorter sentence."

Id. Congress endorsed the concept in 2003 via the Prosecutorial Remedies and

Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"),

Pub. L. No. 108-21, 117 Stat. 650 (2003) (codified in scattered sections of 18, 28

and 42 U.S.C.), and the Sentencing Commission added a new Guideline section

authorizing departures up to four levels for defendants participating in a fast-track

program. See USSG §5K3.1, p.s. Jurisdictions seeking to implement a fast-track

program must obtain authorization from the Attorney General. At the time

Gomez-Castillo was sentenced, Utah did not have a fast-track program, although a

number of other jurisdictions did. In Morales-Chaires we described more fully

the history of fast-track programs and the split among district courts, primarily,

on whether sentencing disparities created by the existence of such programs in

certain districts should lead to reduced sentences for defendants in districts

without such programs. 430 F. 3d at 1127-28, 1130-31.

The defendant in Morales-Chaires made the identical argument Gomez-

Castillo does here. We held in that case that we did not "need [to] resolve

whether sentencing disparities caused by the existence of fast-track programs in

some jurisdictions are or are not, or may be in certain circumstances, considered

unwarranted under § 3553(a)(6)." Id. at 1131. That was because § 3553(a)(6) "is

but one of several factors for a court to consider in determining a reasonable

sentence." Id. We held that a consideration of all the § 3553(a) factors indicated the sentence imposed in that case was reasonable.

Since our decision in Morales-Chaires, the Eighth Circuit has held that "the sentencing disparities arising from fast-track programs [do not] make[] th[e] [defendant's] sentence unreasonable." United States v. Sebastian, 436 F.3d 913, 916 (8th Cir. 2006).[2] Similarly, the Seventh Circuit has held that any disparity between the defendant's sentence and those available to or imposed in fast-track jurisdictions "was considered appropriately as a single, and not controlling, factor" and that the defendant's sentence was not unreasonable. United States v. Martinez-Martinez, 442 F.3d 539, 543 (7th Cir. 2006); see also United States v. Montes-Pineda, No. 05-4411, __ F.3d __, 2006 WL 1062154, at *4 (4th Cir. Apr. 24, 2006) ("[W]e hold that merely pointing out the existence of such [fast-track] disparities, with no reference to the characteristics of the particular defendant, does not render a within-Guidelines sentence unreasonable."); United States v.

_____

[2]As the Eighth Circuit stated:

to require the district court to vary from the advisory guidelines based solely on the existence of early disposition programs in other districts would conflict with the decision of Congress to limit the availability of such sentence reductions to select geographical areas, and with the Attorney General's exercise of prosecutorial discretion to refrain from authorizing early disposition agreements in [certain jurisdictions].

Sebastian, 436 F.3d at 916.

-12-

Martinez-Flores, 428 F.3d 22, 30 n.3 (1st Cir. 2005) (stating in dicta "[i]t is arguable that even post-Booker, it would never be reasonable to depart downward based on disparities between fast-track and non-fast-track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable"), cert. denied, 126 S. Ct. 1449 (2006); Jimenez-Beltre, 440 F.3d at 519 (noting its dicta in Martinez-Flores, and finding that in the case before it, the defendant "had not furnished a factual basis for assessing the extent of the [fast-track] disparities or provided a reason why to take them into account[,] . . . [so] [i]n declining to alter the sentence on this ground, the district court did not act unreasonably" (citation omitted)).

Gomez-Castillo argues that the district court "categorically" refused to consider the disparities caused by fast-track programs. We disagree. The district court acknowledged the existence of those disparities, and noted that disparities were an inevitable result to some degree in the criminal justice system. The court evidently believed that fast-track disparities are not *unwarranted* under § 3553(a)(6). Moreover, consistent with our decision in Morales-Chaires, the court found that those disparities did not trump the remaining § 3553(a) sentencing factors; rather, disparities are *a* factor, to be considered along with the remaining § 3553(a) factors. In this case, the district court correctly found that

-13-

the remaining sentencing factors supported the imposition of the Guideline sentence.

Finally, we acknowledge that the district court's explanation for its sentencing decision was not lengthy, nor did it specifically reference § 3553(a) or meticulously go through each factor.[3]  But, it need not have.

> The sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence, and we will not demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider.

Galarza-Payan, 441 F.3d at 888-89 (quoting United States v. Contreras-Martinez, 409 F.3d 1236, 1242 (10th Cir. 2005) (further quotation, citations, and alteration marks omitted).  "[T]he record plainly shows that it considered the relevant § 3553(a) factors in reaching its conclusions as to an appropriate sentence."  Id. at 889.  In sum, we conclude that the sentence imposed was reasonable.

## CONCLUSION

For the foregoing reasons, we AFFIRM Gomez-Castillo's sentence.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[3]Of course, we encourage district courts to specifically discuss the § 3553(a) factors, so that the rationale behind the sentence imposed is clear both to the defendant and to the appellate court.