**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DAVID ALAN WESTCOTT,

      Defendant-Appellant.

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CHARLES ARNOLD MOOK,

      Defendant-Appellant.

_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MORGAN EARL WINDRIX,

      Defendant-Appellant.

No. 06-5018

(N.D. of Okla.)

(D.C. No. CR-02-120-02-EA)

No. 06-5019

(N.D. of Okla.)

(D.C. No. CR-02-120-04-EA)

No. 06-5026

(N.D. of Okla.)

(D.C. No. CR-02-120-01-EA)

---

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent except under the

(continued...)

Before , **HARTZ**, **EBEL**, and **TYMKOVICH** , Circuit Judges.[**]

Defendants-Appellants Morgan Earl Windrix, Charles Arnold Mook, and David Alan Westcott appeal their sentences for their roles in an Oklahoma methamphetamine ring. All three were convicted of conspiring to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846, and of possessing equipment and chemicals for the manufacture of methamphetamine in violation of 21 U.S.C. § 843(a)(6). Windrix was further convicted of possessing methamphetamine with the intent to distribute in violation of 21 U.S.C. § 843, and maintaining a drug house in violation of 21 U.S.C. § 856(a)(1) and (b). Mook was additionally convicted of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). These consolidated appeals follow re-sentencing. Appellants' first sentences were overturned for error under *United*

[*](...continued)
doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

*States v. Booker*, 543 U.S. 220 (2005). *See United States v. Windrix*, 405 F.3d 1146 (10th Cir. 2005) (*Windrix I*).[1]

We exercise jurisdiction under 21 U.S.C. § 1291, and AFFIRM the district court.

## I. Background

In *Windrix I*, we vacated each Appellant's sentence to allow for re-sentencing under an advisory Guidelines scheme consistent with *Booker*. In doing so, we voiced concern with the district court's attribution of actual methamphetamine to all three Appellants, noting that without laboratory testing, an assumption that all the methamphetamine was pure may be mistaken. In accordance with our remand, the district court resentenced each Appellant de novo. Each Appellant challenges the reasonableness of his new sentence. Westcott and Mook each make further challenges regarding the drug quantities attributed to them and the district court's mandate on re-sentencing. We review the facts relevant to each Appellant's sentence.

### A. Windrix

Windrix was originally sentenced to life in prison under the then mandatory Guidelines. He was found to be accountable for 1.927 kilograms of actual

---

[1] The substance of all three Appellants' criminality is detailed in *Windrix I*, and will not be repeated here. *See* 405 F.3d at 1148–52.

methamphetamine which provided a base offense level of 38. The district court added two levels for Windrix's possession of a firearm. Four more levels were added for his leadership role in the conspiracy, which placed his offense level at 43, the maximum. Combined with Windrix's criminal history category I, the Guidelines prescribed life imprisonment.

On remand, the district court attributed drug quantities to Windrix in excess of those found by the jury, finding Windrix accountable for 8.85 kilograms of a substance containing methamphetamine. This set his base offense level at 36 based on the difference between the jury's finding of "actual" methamphetamine versus the court's "substance containing" finding. With the firearm and leadership enhancements Windrix's offense level was therefore reduced to 42. Combined with his criminal history category of I, the Guidelines recommended 360 months to life imprisonment. Explicitly taking the factors under 18 U.S.C. § 3553(a) into account, the court sentenced Windrix to 360 months for the conspiracy and equipment convictions, 120 months for the equipment conviction, and 240 months for possession with intent to distribute, with the sentences to run concurrently.

**B. Westcott**

Westcott was originally sentenced to 360 months in prison, the minimum available under the then mandatory Guidelines. He was found to be accountable

for 1.927 kilograms of actual methamphetamine which provided a base offense level of 38. Combined with Westcott's criminal history category of V, the Guidelines prescribed 360 months to life imprisonment. At re-sentencing, noting our concern with the attribution of actual methamphetamine absent laboratory tests the court held Westcott accountable for 8.845 kilograms of a substance containing methamphetamine. This set his base offense level at 36. With Westcott's criminal history category of V, the Guidelines recommended 292 to 365 months imprisonment. Explicitly taking the factors under 18 U.S.C. § 3553(a) into account, the court sentenced Westcott to 292 months: 240 months for the conspiracy and equipment convictions, and 52 months for the firearm count.

## C. Mook

Mook was originally sentenced to 360 months in prison, also the minimum available under the then mandatory Guidelines. He was found to be accountable for 1.84 kilograms of actual methamphetamine which provided a base offense level of 38. The district court added two levels for Mook's possession of a firearm which left his offense level at 40. Combined with Mook's criminal history category of III, the Guidelines prescribed 360 months to life imprisonment.

At re-sentencing, the court held Mook accountable for 5.4 kilograms of a substance containing methamphetamine. This set his base offense level at 36. With the firearm enhancement and Mook's criminal history category of III, the Guidelines recommended 292 to 365 months imprisonment. Explicitly taking the factors under 18 U.S.C. § 3553(a) into account, the court sentenced Mook to 292 months: 240 months for the conspiracy and equipment convictions, and 52 months for the firearm count.

## II. Discussion

In reaching all three Appellants' second sentences, the district court attributed drug quantities to them in excess of those found by the jury. At re-sentencing, Westcott and Mook objected to the new sentence, arguing that the court could not legally hold them accountable for more then 50 grams of methamphetamine or 500 grams of a mixture because the jury had acquitted them of charges alleging they distributed more than these amounts of drugs. They also argued that the law of the case precluded the district court from recalculating the weight of the methamphetamine attributable to them at re-sentencing. They argued that allowing the district court to recalculate the drug weight would cause *Booker* to operate in a manner that violates ex post facto principles of the Due Process Clause. All three Appellants contended their sentences were unreasonable under *Booker*.

We address the same arguments on appeal.

## A. Scope of District Court Authority to Calculate Drug Quantity on Remand

Westcott's and Mook's first two contentions on appeal concern the district court's calculation of the drug quantity attributable to them. Each maintains first that the district court could not hold him responsible for more methamphetamine than the jury did. Alternatively, they argue that the district court was bound by the law of the case to adhere to its calculation of drug weight used in the first sentencing because this court did not grant a mandate for de novo re-sentencing.

### 1. Impact of Jury Verdict

Westcott's and Mook's argument that the district court could not consider facts contrary to the jury verdict at re-sentencing is foreclosed by our caselaw. In *United States v. Magallanez*, we held that a sentencing court has broad discretion to consider information regarding a defendant's conduct, even conduct that conflicts with a jury verdict. 408 F.3d 672, 684–85 (10th Cir. 2005). The holding of *Magallanez* is based on the different standards of proof that apply at trial and at sentencing. At trial, guilt is determined beyond a reasonable doubt. *Id.* at 684. "[E]ven after *United States v. Booker*, 543 U.S. 220 (2005)[], sentencing courts determine relevant facts based on a preponderance standard." *Id.* at 685. Most other circuits agree. *See, e.g., United States v. Valdez*, 453 F.3d 252, 264 (5th Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir.

2005); *United States v. Price*, 418 F.3d 771, 788 (7th Cir. 2005). We therefore reject the argument that the sentencing judge could not hold Westcott and Mook accountable for more methamphetamine than the jury found was attributable to them at trial.

   2. *Law of the Case*

Westcott and Mook also contend that the district court could not depart from its determination that 1.927 and 1.84 kilograms of methamphetamine were attributable to them, respectively. In doing so, they allow that the district court could determine that the established weights were of a substance containing methamphetamine and not pure methamphetamine. They insist, however, that the total weight attributable to each must remain unchanged because this court did not grant a mandate to reconsider the total weight of illegal substances attributable to them. If Westcott and Mook are correct, the district court went beyond its authority when it simultaneously found that Westcott and Mook were responsible for a mixture and not pure methamphetamine and that the total amount of the mixture attributable to each was 8.845 and 5.4 kilograms, respectively.

As a general matter, re-sentencing on remand is done de novo. *United States v. Keifer*, 198 F.3d 798, 801 (10th Cir. 1999). We may, however, limit district court discretion on remand pursuant to the mandate rule. *Id.* This rule requires the district court to exercise its discretion in conformity with the

appellate court's remand. *United States v. Hicks*, 146 F.3d 1198, 1200 (10th Cir. 1998).[2] Our caselaw requires that we be specific if we intend to limit a district court's discretion on remand for re-sentencing. *Compare United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996) (panel gives direction to resentence defendant within range of 27 to 33 months) *with United States v. Davis*, 912 F.2d 1210, 1215 (10th Cir. 1990) (providing for general remand).

Our remand in this case was not so specific. We simply "set aside Defendants' sentences and remand for resentencing." *Windrix I*, 405 F.3d at 1158. It is true that we urged the district court to "note a concern regarding the determination of the purity of the methamphetamine prepared by Defendants." *Id.* This language, however, did not limit the district court's discretion, but explicitly advised it to consider using its broad discretion to revisit its earlier finding regarding drug purity. That we invited a recalculation of drug purity does not lead to the conclusion that we foreclosed any new thinking regarding the drug amount. We therefore reject the argument that the district court was required by

---

[2] The mandate rule is a relative of the law of the case doctrine, which Westcott cites. This doctrine requires that findings made at one point in litigation may not be contested at a later stage, except under limited circumstances. *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996).

the law of the case or the mandate rule to conform to its earlier calculation of drug weight. Re-sentencing for all three Appellants was appropriately de novo.[3]

## B. Ex Post Facto

All three Appellants contend that the remedial holding of *Booker* violates ex post facto principles of the Due Process Clause of the Constitution. This argument is similarly foreclosed by our precedent. We first held that *Booker* does not run afoul of ex post facto principles in *United States v. Rines*, 419 F.3d 1104, 1106–07 (10th Cir. 2005). We recently explained the reasoning behind this rule in *United States v. Portillo-Quezada*, 469 F.3d 1345, 1354–56 (10th Cir. 2006). In short, nothing in *Booker* altered the statutory maximum sentences to which Windrix, Westcott and Mook were subject for their criminal conduct. Their exposure to punishment was therefore unchanged by re-sentencing and ex post facto principles are not implicated on remand. *See id.* We are thus unpersuaded by the argument that the sentences violate ex post facto principles of the Due Process Clause.[4]

---

[3] We note the Fifth Circuit has recently articulated a different approach to the mandate rule. *See United States v. Pineiro*, 470 F.3d 200 (5th Cir. 2006) (holding that without explicit mandate, a district court's authority on remand for re-sentencing did not include authority to recalculate applicable advisory Guidelines range). Suffice it to say that our precedent forecloses such an approach.

[4] We similarly reject Windrix's argument that the district court could not consider uncharged conduct in determining his sentence. "[W]hen a trial judge

(continued...)

-10-

## C. Drug Quantity Attributable to Westcott

Westcott contends the government did not present sufficient evidence to allow the district court to attribute 8.845 kilograms of a mixture containing methamphetamine to him. Under the advisory Guidelines, the government must prove, by a preponderance of the evidence, that drug quantities for which a participant in a drug conspiracy is held responsible were "reasonably foreseeable" to him. *See* USSG § 1B1.3(A)(1)(B). In determining the weight of drugs involved in a drug conspiracy, the district court may rely on estimates supported by the facts of the case when actual drugs are not seized. *United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996). These estimates can be provided by the testimony of witnesses and co-conspirators. *Id.* We review the district court's factual findings regarding drug quantities for abuse of discretion.

---

[4](...continued)
exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker*, 543 U.S. at 233. In our cases interpreting *Booker*, we have repeatedly recognized that sentence enhancements do not violate the Sixth Amendment where the sentencing court applies the Guidelines in an advisory fashion. *United States v. Bustamante*, 454 F.3d 1200, 1202 (10th Cir. 2006); *United States v. Dalton*, 409 F.3d 1247, 1252 (10th Cir. 2005); *United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir. 2005); *United States v. Lawrence*, 405 F.3d 888, 890 (10th Cir. 2005). In light of these holdings, Windrix has no right to a jury determination of the facts the trial judge deems relevant in arriving at his sentence, so long as that sentence is reasonable.

Westcott maintains that most of the 8.845 kilograms of methamphetamine was not reasonably foreseeable to him because unlike his co-defendants, he did not live in the trailer where the methamphetamine was manufactured. Westcott argues that trial testimony showed only that he would arrive after most methamphetamine "cooks" and clean the equipment used to make the drugs so as to use the remaining "scraps" to satisfy his own drug habit. He concedes that trial testimony also showed that he broke down ingredients for methamphetamine *several* times, but contends that this means he did not participate in *all* the manufacturing sessions during the life of the conspiracy as found by the district court.

We disagree. The district court arrived at the 8.845 kilograms by reviewing available testimony and attributing to Westcott the amount of methamphetamine manufactured by the conspiracy during the period Westcott participated in it. The district court did not commit clear error in attributing these amounts to Westcott even if his role was primarily to clean up the equipment after a manufacturing session. Other evidence established knowing participation in manufacturing the methamphetamine, its preparation as well as the related clean up and disposal.

## D. Booker Reasonableness

Finally, all three Appellants argue that their sentences are unreasonable. We review sentences for reasonableness in light of the factors set forth in 18

U.S.C. § 3553(a). *United States v. Galarza-Payan*, 441 F.3d 885, 887 (10th Cir. 2006). A properly calculated Guideline sentence is "entitled to a rebuttable presumption of reasonableness." *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam). In evaluating a district court's calculation of the applicable Guideline range, we review its factual conclusions for clear error and its legal conclusions de novo. *Id.*

Windrix, Westcott and Mook were properly sentenced within the applicable Guideline range.[5] Their sentences are therefore presumptively reasonable. We address the reasonableness of each Appellant's sentence in turn.

*1. Windrix*

Windrix argues that *Kristl* runs afoul of *Booker* and *Blakely v. Washington*, 542 U.S. 296 (2004). Although we disagree with his premise, even if we found the argument persuasive, we are bound by our precedent. *See United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000) (noting that one panel may not overrule another panel).

---

[5] Westcott alone argues that his sentence was improperly calculated under the Guidelines because the district court attributed more methamphetamine to him than he could have reasonably foreseen. Because we hold Westcott could have reasonably foreseen that 8.845 kilograms of methamphetamine were manufactured by his co-conspirators, we also hold his sentence to have been properly calculated.

The fact of the matter is that Windrix cannot rebut the presumption of reasonableness. The district court considered the relevant factors under 18 U.S.C. § 3553(a) in arriving at a 360-month sentence. That Windrix does not like the outcome of the district court's weighing of the § 3553(a) factors does not render the district court's sentence unreasonable. Because Windrix advances no argument on appeal as to why the presumption of reasonableness should be rebutted, we conclude his sentence is reasonable. Even without the presumption, we are unpersuaded that reasonableness requires our reconsideration of the sentence.

*2. Westcott*

Westcott contends his sentence is unreasonable because the court failed to grant him either minor-participant status pursuant to USSG § 3B1.2 or a non-Guideline sentence under 18 U.S.C. § 3553(a). He argues that his sentence should be reduced because he (1) participated in the conspiracy not for financial gain, but to fuel his own drug habit, and (2) has two young sons in need of his support. He cites cases in which appellate courts, including ours, have upheld below-Guidelines sentences in similar factual situations.

Put simply, the district court explicitly considered the relevant § 3553(a) factors, including § 3553(a)(1) which mandates the court take into account "the nature and circumstances of the offense and the history and characteristics of the

offender" and determined that a non-Guideline sentence was not appropriate to Westcott. We will not second guess the district court's decision against a non-Guideline sentence where the presumption of reasonableness has not been rebutted or where the sentence's reasonableness has not been seriously questioned. Accordingly, we conclude that Westcott's sentence is reasonable with or without the *Kristl* presumption.

*3. Mook*

Mook contends his sentence is unreasonable because the court failed to grant him a non-Guideline sentence under 18 U.S.C. § 3553(a). He argued at sentencing and re-sentencing that his sentence should be reduced because he is (1) a drug addict, (2) so old that his 292-month sentence will leave him in prison until near his 70th birthday, and (3) sick and therefore not suited to prison life. The district court explicitly considered the relevant § 3553(a) factors, including § 3553(a)(1). We will not quibble with the district court's decision against a non-Guideline sentence absent compelling reasons. Accordingly, we conclude that Mook's sentence is reasonable regardless of our mandate to apply a presumption of reasonableness to Guideline sentences.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district Court.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge