**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JORGE CABANILLAS,

Defendant - Appellant.

No. 08-2027
(D. New Mexico)
(D.C. No. 07-1412 JB)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Jorge Cabanillas pleaded guilty to illegally reentering the United States

after deportation, in violation of 8 U.S.C. § 1326(a), and (b), and the district court

sentenced him to forty-six months' imprisonment. Mr. Cabanillas now appeals

his sentence, arguing that it was substantively unreasonable due to the district

court's failure to grant a downward variance pursuant to 18 U.S.C. § 3553(a). We

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* FED. R. APP. P. 34(f); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH CIR. R. 32.1.

have jurisdiction under 18 U.S.C. § 3231 and affirm the district court's decision.

## I. BACKGROUND

In 1990, Mr. Caballinas, a citizen of Mexico who had lived in the United States since childhood, pleaded guilty to attempted murder in the Superior Court of California, in Los Angeles, and was sentenced to seven years' imprisonment. After his release, Mr. Cabanillas violated the conditions of his parole and was sentenced to one year of imprisonment. After he served this sentence, immigration officers deported Mr. Cabanillas to Mexico, but he illegally returned to California soon thereafter. Years after his illegal reentry, Mr. Cabanillas voluntarily testified for the prosecution in a high profile murder trial against members of a gang to which he had once belonged. He later relocated to Chaparral, New Mexico, where he lived with his wife and five children, all of whom are American citizens, until his arrest for illegal reentry in June 2007.

Under the United States Sentencing Guidelines, the base offense level for illegal reentry is 8. U.S.S.G. § 2L1.2. Mr. Cabanillas received a 16-level enhancement because the district court concluded that he had previously been convicted of a "crime of violence" as U.S.S.G. § 2L1.2 defines that term, *see* U.S.S.G. § 2L1.2(b)(1)(A)(ii); cmt. n.1(B)(iii) (defining "crime of violence"), but he received a 3-level decrease for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. In combination with Mr. Cabanillas's criminal history category III, the total offense level of 21 yielded an advisory Guidelines range of 46 to 57 months'

imprisonment.

Before sentencing, Mr. Cabanillas filed a motion requesting a downward variance under 18 U.S.C. § 3553(a) based upon cultural assimilation and his vulnerability to retaliation in prison due to his prior testimony against gang members. With respect to cultural assimilation, Mr. Cabanillas contended that his continued presence in the United States as well as his family ties here, rendered him less blameworthy for illegally reentering and remaining in the country.

The district court determined that a variance was not appropriate and sentenced Mr. Cabanillas to 46 months' imprisonment, the bottom of the advisory Guidelines range. Further, the court announced that "even were a departure warranted under the facts of this case, the Court would not exercise its discretion to depart." Rec. doc. 26, at 2. Mr. Cabanillas timely filed this appeal, arguing that, in light of the court's denial of his requests for a variance, his sentence was substantively unreasonable.

## II. DISCUSSION

We review district court sentencing decisions for reasonableness, applying an abuse-of-discretion standard. *Gall v. United States*, — U.S. — , 128 S. Ct. 586, 594 (2007); *United States v. Smart*, 518 F.3d 800, 806 (10th Cir. 2008). As we have explained, reasonableness has both a procedural and a substantive component. *United States v. Sutton*, 520 F.3d 1259, 1262 (10th Cir. 2008). *Procedural* reasonableness is attained when a district court correctly calculates

the advisory Guidelines range and applies the factors set forth in § 3553(a). *See id.* A sentence is *substantively* reasonable if "it ultimately reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007), *overruled in part on other grounds by Irizzarry v. United States*, 128 S. Ct. 2198, 2203-04 (2008). "If the district court correctly calculates the Guidelines range based upon the facts and imposes sentence within that range, the sentence is entitled to a presumption of reasonableness." *Sutton*, 520 F.3d at 1262. To rebut this presumption, a defendant must show that in light of the § 3553(a) factors, the sentence is unreasonable. *United States v. Kristl*, 437 F.3d 1050, 1054-55 (10th Cir. 2006).

Mr. Cabanillas concedes that the district court correctly calculated his advisory Guidelines range, but he seeks to rebut our presumption of the sentence's substantive reasonableness by arguing that he has culturally assimilated to the United States and by asserting that his prior cooperation with law enforcement creates a risk of retaliation by his fellow prisoners. We first consider Mr. Cabanillas's cultural assimilation claim and then turn to his retaliation argument.

A.     Cultural Assimilation

Mr. Cabanillas's contention that his extensive ties with the United States warranted a "modest downward variance," Aplt's Br. at 2, relies primarily on the reasoning of one of our sister circuits, which we have not expressly adopted.

Before the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), the Ninth Circuit recognized "cultural assimilation" as an appropriate basis for departure from the mandatory Guidelines sentencing range, reasoning that it was "akin to the factor of family and community ties" and could appropriately be considered as part of a defendant's personal history. *United States v. Lipman*, 133 F.3d 726, 731 (9th Cir. 1998) (internal quotation marks omitted); *see also* 18 U.S.C. § 3553(a)(1). In the context of illegal reentry, the court theorized, an individual is less culpable when he has come back to the United States to join his family, and not to engage in criminal or economic activity. *Lipman*, 133 F.3d at 730. At least two other circuits adopted an approach similar to that of the Ninth Circuit. *United States v. Rodruiguez-Montelongo*, 263 F.3d 429, 433 (5th Cir. 2001); *United States v. Sanchez-Valencia*, 148 F.3d 1273, 1274 (11th Cir. 1998). *But see United States v. Mejia*, 309 F.3d 67, 71 (1st Cir. 2002) (finding family ties to the United States to be a "discouraged factor" under the Guidelines).

Without rejecting or endorsing the reasoning of our sister circuits, we have observed that "in the altered post-*Booker* sentencing landscape[,] . . . family and cultural ties, however the factor is characterized, will [] be part of tailoring an appropriate sentence." *United States v. Galarza-Payan*, 441 F.3d 885, 889 (10th Cir. 2006) (internal quotation marks omitted). Of course, "a particular defendant's cultural ties must be weighed against other factors such as (1) sentencing disparities among defendants with similar backgrounds and

characteristics, and (2) the need for the sentence to reflect the seriousness of the crime and promote respect for the law." *Id.* at 889-890 (citing § 3553(a)(2), (6)).

Notwithstanding Mr. Cabanillas's extensive ties to the United States, the district court's denial of a downward variance in this case was reasonable, particularly in light of countervailing factors. Expressing a concern for sentencing disparities, the court observed that Mr. Cabanillas's status as a long term illegal resident in the United States was not unique: "Many people in [Mr.] Cabanillas's situation come to the United States at a young age and have spent considerable time, if not most of their lives, here, so his situation is not distinguishable from others that have been before the Court." Rec. vol. I, doc. 26, at 2. Moreover, the court noted that much of Mr. Cabanillas's purported assimilation was not "of a law-abiding nature," as he had been convicted of several crimes in the United States. *Id.* In light of this analysis, we are convinced that the court properly considered Mr. Cabanillas's personal history and reached the reasonable conclusion that a variance based upon cultural assimilation was not warranted.

B.     Retaliation

While we have not considered this issue at length since the Supreme Court decided *Booker*, we have recognized that, in certain limited circumstances, a defendant's susceptibility to retaliation in prison may be an acceptable basis for downward adjustment. *See United States v. LaVallee*, 439 F.3d 670, 708 (10th

Cir. 2006) (upholding a downward departure based on the defendant's susceptibility to abuse in prison). Here, the court acknowledged that Mr. Cabanillas put himself at risk by cooperating with the government in the prosecution of a fellow gang member, but stated that "it is not uncommon for persons to cooperate with the government and thereby put their lives in jeopardy." Rec. vol. I, doc. 26, at 3. The court noted, "[T]he Bureau of Prisons is accustomed to handling prisoners who previously belonged to gangs and is capable of ensuring [Mr. Cabanillas's] safety as much as it is of any former gang member." *Id.* The court further observed, "[Mr. Cabanillas's] life is in danger whether he is imprisoned or not." *Id.* (internal quotation marks omitted).

Like the district court, we acknowledge "that [Mr.] Cabanillas played an important role in the conviction of a person involved in the gang-related murder of a woman and her child. There is no doubt that his cooperation with government officials in Los Angeles has placed his life in jeopardy." *Id.* at 3. However, the district court was correct to observe that the incarceration of former gang members who have testified on behalf of the government is not uncommon. We note the district court's firm confidence that the Bureau of Prisons to ensure Mr. Cabanillas's safety, and we are of the belief that the Bureau will take all steps necessary to justify the district court's confidence. Therefore, we cannot say that the district court's denial of a variance was unreasonable in this case.

### III. CONCLUSION

Accordingly, we AFFIRM the decision of the district court. The motion to seal the briefs and the record is granted.

Entered for the Court


Robert H. Henry
Chief Circuit Judge